IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDGAR H. MESSNER,** | : | **Civil No. 4:13-CV-00014** |
| **Plaintiff** | : | **(Judge Brann)** |
| v. | : | **(Magistrate Judge Carlson)** |
| **SWEPI, LP,** | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

The above-captioned action concerns a straightforward contractual dispute between Edgar H. Messner, who owns approximately 160 acres of real property in Tioga County, Pennsylvania, and SWEPI, LP, an oil and gas company that is party to a lease with Messner for oil and gas rights existing on the property. Mr. Messner brought this action in an effort to obtain a judicial declaration that the lease between the parties has terminated and is no longer in effect; SWEPI maintains that it properly extended the term of the lease by tendering the plaintiff a required "Shut-In Royalty" payment pursuant to the clear and express terms of the lease.

After removing the action from the Court of Common Pleas for Tioga County to this Court on the basis of diversity of citizenship under 28 U.S.C. §§ 1332, 1441(b), and 1446, SWEPI moved to dismiss the complaint. (Doc. 4.) After the motion was

fully briefed (Docs. 5, 6, 7, 13), the Court convened oral argument on the motion upon the parties' request. (Doc. 16.) The parties then submitted post-hearing memoranda on the question of whether the so-called automatic termination rule applies under Pennsylvania law to the particular contractual dispute at issue in this case (Docs. 19, 20).

Upon consideration of the parties' briefs and arguments to the Court, we conclude that the plaintiff's position misinterprets the Shut-In Royalty paragraph of the lease agreement, his reading of the lease terms is unreasonable, and his argument regarding the alleged application of the law in this field to be unpersuasive under the facts of this case and the specific terms of the lease. In short, we find that the plaintiff has pleaded no facts that would provide a basis to declare that the lease agreement between the parties has been terminated. To the contrary, accepting the facts pleaded in the complaint as true, and giving natural construction to the clear terms of the lease agreement between the parties, we find that the Shut-In Royalty paragraph of the lease was applicable at the conclusion of the primary term of the lease, and that SWEPI complied with the requirements in the lease for maintaining the lease after the end of the five-year primary term by tendering the Shut-In Royalty payment required. Accordingly, we will recommend that the defendant's motion to dismiss be granted.

**II.    BACKGROUND**

Edgar H. Messner, the plaintiff in this case, owns the oil and gas rights underlying 159.97 acres of land in Tioga County, Pennsylvania. (Doc. 1, Compl. ¶ 5.) On or about October 16, 2006, Messner and SWEPI's predecessor, East Resources, entered into an oil and gas lease concerning the property. (Id. ¶ 6.) In addition to other terms, the lease had a primary term of five years commencing on October 16, 2006, allowed for pooling and unitization, and contains a paragraph providing for a Shut-In Royalty payment. (Id. ¶¶ 7-8, 17; Compl., Ex. A (Lease), ¶¶ 3, 9, 12.) The Shut-In Royalty paragraph of the lease, which is central to the merits of the plaintiff's claims and resolution of the pending motion to dismiss, provides in its entirety as follows:

> If during or after the primary term of this lease, all wells on the leased premises or within a unit that includes all or a part of the leased premises, are shut-in, suspended or otherwise not producing *for any reason whatsoever* for a period of twelve (12) consecutive months, and there is no current production of oil or operations on said leased premises sufficient to keep this lease in force and this lease is not otherwise kept in force by other provisions of this lease, Lessee may maintain this lease in effect by tendering to Lessor a shut-in royalty equal to the Delay Rental as found elsewhere in this lease. Said shut-in royalty shall be paid or tendered to the Lessor within ninety (90) days after the next ensuing yearly anniversary of the Effective Date of this lease, and thereafter on or before each yearly anniversary of the Effective Date hereof while the wells are shut-in or production therefrom is not being marketed by Lessee. Upon payment of the shut-in royalty as provided herein, this lease will continue in force during all of the

> time or times while such wells are shut-in but failure to properly pay shut-in royalties shall [r]ender Lessee liable only for the amount due and shall not operate to terminate this lease.

(Lease, ¶ 12)(emphasis added).

In January and February of 2011, SWEPI's predecessor in interest pooled approximately 135 of the leased acres into two units – the Guindon #706 Unit (which contained approximately 10 acres of the leased property), and the Ingalls #710 Unit (which contained approximately 125 acres of the leased property). (Doc. 1, Compl., ¶¶ 9-10.) In addition, SWEPI's predecessor drilled a well on each of the units – the Guindon #706-1V and the Ingalls #710-1V. (Id. ¶¶ 11, 13.) After the wells were drilled, they were shut in; however, SWEPI tendered the Shut-In Royalty payments to the plaintiff that were required under the terms of the lease. (Id. ¶¶ 17-18; Lease, ¶ 12.) The plaintiff has refused to accept the Shut-In Royalty payments from SWEPI. (Compl., ¶ 18.) The plaintiff has apparently refused to accept the Shut-In Royalty payment because he takes the position that the lease has expired, (id. ¶ 16), and accordingly commenced this lawsuit seeking to have the lease declared expired or otherwise invalid. The plaintiff's argument is based on his contention that neither the Guindon #706-IV well or the Ingalls #710-IV well are capable of producing gas in paying quantities, and therefore neither of these wells can be characterized as being "shut in" under paragraph 12 of the lease. (Id. ¶¶ 19-22.)

Because the plaintiff construes the Shut-In Royalty provision in the lease as being dependent upon the ability of either of the wells to produce paying quantities of gas, a limitation which cannot be found in the lease itself. and because he has pleaded that the drilled wells are incapable of doing so, he argues that the Shut-In Royalty paragraph is inapplicable, and cannot be used to maintain, extend, or otherwise hold the lease beyond the October 16, 2011 termination of the primary term. (Id. ¶¶ 23, 25.) The plaintiff therefore maintains that "since there was no well producing oil or gas in paying quantities on the Messner Property or 'lands pooled therewith' on October 16, 2011, the Lease automatically expired and/or terminated at midnight on October 16, 2011 pursuant to paragraph 3 of the Lease and Pennsylvania law." (Id. ¶ 24.) Finally, the plaintiff claims that SWEPI has neglected, failed or refused to execute a form of lease surrender that Messner tendered, and has allegedly "continued to wrongfully assert and/or maintain an alleged interest in the hydrocarbon formations beneath the Messner Property." (Id. ¶ 26.)

Upon being served with a copy of the complaint, SWEPI promptly removed the action to this Court on January 3, 2013. (Doc. 1.) One week later, SWEPI moved to dismiss the complaint on the grounds that the plaintiff's complaint fundamentally misconstrues the plain language of the Shut-In-Royalty provision in the lease, which SWEPI maintains is applicable, and was satisfied by SWEPI's tender of the required

5

Shut-In Royalty payment called for under the lease. In this regard, SWEPI notes that the complaint pleads facts showing that SWEPI drilled wells on the two units that include 135 acres of the leased premises. (Compl., ¶¶ 9, 11, 13.) The complaint avers that the wells are not producing, and that SWEPI has tendered the required Shut-In Royalty payment required under the lease. (Id. ¶¶ 15, 17-18.) Accordingly, SWEPI moves to dismiss the complaint, arguing that under the facts pled, and the clear terms of the lease, the lease agreement between the parties "will continue in force" and is not otherwise expired or terminated. We agree and recommend that SWEPI's motion be granted.

## III. STANDARD OF REVIEW

This action arises under the court's diversity jurisdiction. As a federal court sitting in diversity, we are obliged to apply the substantive law of the forum state, which in this case is Pennsylvania. Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). The Declaratory Judgment Act authorizes district courts of competent jurisdiction to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Declaratory relief is within the sound discretion of the district court to grant, and in deciding whether to do so the court is obliged to consider 'facts bearing on the usefulness of the

declaratory judgment remedy, and the fitness of the case for resolution.'" Stewart v. SWEPI, LP, No. 4:11-CV-2241, 2013 WL 170181, at *4, __ F. Supp. 2d. __ (M.D. Pa. Jan. 16, 2013) (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 289 (1995)).

The standard of review under Rule 12(b)(6) is well established and familiar to the parties. Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir.2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45–46 (1957) ). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. Id. at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515

F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."). However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994).

**IV. DISCUSSION**

    **A. The Shut-In Royalty Provision Permitted SWEPI to Extend the Lease**

Under Pennsylvania law, "a lease is in the nature of a contract and is controlled by principles of contract law." T.W. Phillips Gas and Oil Co. v. Jedlicka, 42 A.3d 261, 267 (Pa. 2012). The lease "is to be construed in accordance with the terms of the agreement as manifestly expressed." J.K. Willison v. Consolidation Coal Company, 637 A.2d 979, 982 (Pa. 1994), and accordingly the language of the lease should be given its "accepted and plain meaning, rather than the silent intentions of the contracting parties." Jedlicka, 42 A.3d at 261. The party seeking to terminate the lease bears the burden of proof. Id. at 267 (citing Jefferson Cnty. Gas Co. v. United Natural Gas Co., 93 A. 340, 341 (Pa. 1915)).

Under Pennsylvania law it is well settled that a court is required to construe the entire language of the contract and avoid a construction and interpretation that would render certain language to be surplusage or a nullity. See, e.g., Murphy v. Duquesne Univ., 777 A.2d 418, 429 (Pa. 2001) ("The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent."); Pritchard v. Wick, 178 A.2d 725, 727 (Pa. 1962); see also Great Am. Ins. Co. v. Norwin Sch. Dist., 544 F.3d 229, 243 (3d Cir. 2008).

With these principles of Pennsylvania law governing contract interpretation in

mind, we turn to paragraph 12 of the lease, which contains the Shut-In Royalty provisions. This paragraph, in relevant part, provides as follows:

> If during or after the primary term of this lease, all wells on the leased premises or within a unit that includes all or a part of the leased premises, are . . . otherwise not producing for any reason whatsoever for a period of twelve (12) consecutive months, . . . Lessee may maintain this lease in effect by tendering to Lessor a shut-in royalty equal to the Delay Rental as found elsewhere in this lease. . . . Upon payment of the shut-in royalty as provided herein, this lease will continue in force during all of the time or times while such wells are shut in.

(Lease, ¶ 12.) We agree with SWEPI that giving effect to the foregoing language, even accepting all factual allegations in the complaint as true, compels the dismissal of the complaint. The complaint pleads that the lease had a five-year primary term that commenced on October 16, 2006, the leased acreage was pooled, and a well was drilled on each of the units during the primary term of the lease. (Compl., ¶¶ 7, 9-13.) The complaint pleads that the drilled wells are not producing. (Id. ¶ 15.) The complaint pleads that SWEPI tendered the Shut-In Royalty payment to the plaintiff. (Id. ¶¶ 17-18.) These facts, as pled, place this dispute squarely within the scope of the Shut-In Royalty provision, and we see no reason why the plain language of this provision does not compel the conclusion that SWEPI complied with the terms of the lease, and properly exercised its right to maintain the lease in effect by tendering the shut-in royalty payment after wells that were drilled on the units were "not producing

for any reason whatsoever."[1]

Aside from not giving full effect to all of the contractual language actually used in the lease, the plaintiff endeavors to avoid this straightforward interpretation of the plain language of the lease by citing to numerous decisions from other courts outside of Pennsylvania that discuss the purposes of shut-in royalty provisions. While perhaps useful as the foundation of a public policy discussion in this field, these cases are not in any way dispositive of the instant dispute. The plaintiff essentially ignores the actual language of the Shut-in Royalty paragraph that the parties used in their contract, and instead asks the Court to find as a matter of law that shut-in royalty provisions may only be applied to "wells capable of producing gas in paying quantities." (Doc. 6, at 9.) In support of this argument, the plaintiff relies on decisions where courts have found in general that shut-in royalty provisions, or similar savings clauses in oil and gas leases, "will only maintain a lease via the payment of the shut-in royalty if the well is *actually capable* of production." (Id. at 9-10)

---

[1] While the plaintiff's complaint fails to include allegations in the complaint that give full effect to the entire language of paragraph 12 of the lease, as he omits the "for any reason whatsoever" language that the parties included in the Shut-In Royalty paragraph, the parties agree that the lease contains this language and an undisputed, authentic copy of the lease attached to the pleadings contains this language. Therefore we may consider these "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). .

11

(original emphasis.) The plaintiff cites to Levin v. Maw Oil & Gas, LLC, 234 P.3d 805 (Kan. 2010) for this proposition, but review of that case reveals that the leases at issue in that case did not define the term "shut in" and otherwise did not provide clear indication of the parties' agreement regarding when the shut-in royalty provision could be triggered. Id. at 815. In contrast to Levin, the parties in the instant case expressly agreed that the Shut-in Royalty provision would apply whenever a well was "not producing for any reason whatsoever." The parties' choice of expansive language in this provision distinguishes this case from Levin, rendering that holding – and whatever persuasive value it may have in Pennsylvania – inapposite.

Likewise, we do not find anything in Bixler v. Lamar Exploration Co., 733 P.2d 410 (Okla. 1987) to change our interpretation of the lease at issue in this case. In Bixler, the Oklahoma Supreme Court did not even discuss the language of the lease agreement, but instead relied on secondary legal sources to support the observation that "[i]t is generally said that payment of a shut-in royalty will not suffice to hold a lease unless the shut-in well is capable of paying production." Id. at 412. Although this may be an accurate generalization of the law in this field in a number of jurisdictions, under Pennsylvania law our assessment of the lease is controlled by the language that the parties actually used in their contractual agreement, and in this case the lease authorizes the lessee to tender a shut-in royalty payment to the lessor if the

drilled wells are not producing for any reason, and does not condition the provision on a factual finding of whether the wells were, in fact, capable of producing in paying quantities. We find this places the lease in this case in a different light from the leases under consideration in Levin and Bixler, or other cases that the plaintiff relies on from states outside of Pennsylvania.

In summary, the Shut-In Royalty provision contained in the Messner lease appears to be materially different from those shut-in clauses found in the contracts cited by the plaintiff, and we underscore that the savings paragraph used by the parties permits the lessee to tender the Shut-In Royalty payment to the lessor when all of the wells on the property or in the unit are (1) shut-in, (2) suspended, *or* (3) otherwise not producing for any reason whatsoever. (Lease, ¶ 12.) The plaintiff ignores the second and third triggering events, and instead relies on non-Pennsylvania cases that concern only wells that are "shut-in" or leases that contain shut-in provisions that require the wells to be capable of producing gas. See, e.g., Maralex Resources, Inc. v. Gilbreath, 76 P.3d 626, 630 (N.M. 2003) (shut-in royalty clauses began "[w]here gas from a well or wells capable of producing gas only . . . ."); Tucker v. Hugoton Energy Corp., 855 P.2d 929, 934 (Kan. 1993) (same); Levin, 234 P.3d at 810 (shut-in royalty clauses in the leases applied only where wells were shut-in, no other circumstances permitted); Hydrocarbon Mgmt., Inc. v. Tracker Exploration, Inc., 861 S.W.2d 427, 433 (Tex.

App. 1993) (provision at issue began "[w]here gas from any well or wells capable of producing gas, . . . ."); Taylor v. Kimbell, 54 So.2d 1, 2 (La. 1951) (shut-in provision began "[w]here gas from a well producing gas only . . . .").

Thus, the cases on which the plaintiff relies concern shut-in provisions that are far narrower and more limited than the Shut-In Royalty paragraph in this case, which authorized SWEPI to tender the payment not only if a producing well was shut-in, but also where a well was suspended, or simply "not producing for any reason whatsoever." (Lease, ¶ 12.) Pennsylvania law requires that we give full effect to the language in the lease, and not to read out of the lease provisions that the parties opted to include, such each of the triggering conditions included in the Shut-In Royalty provision. The parties chose this language, and it must be given effect. See Pritchard, 178 A.2d at 727 ("It is a rule of universal application that in construing a contract each and every part of it must be taken into consideration and given effect if possible . . . ."). In this case, the complaint pleads facts that, taken as true, demonstrate that SWEPI properly tendered the Shut-In Royalty payment to Messner pursuant to the terms of paragraph 12 of the lease, which permitted that such a payment be made – and the lease extended – upon the suspension of the wells, or if those wells were not producing.

    **B.**    **The Automatic Termination Rule Is Inapplicable to the Lease in this Case**

During oral argument in this matter, and in a post-hearing brief, the plaintiff advanced another argument in opposition the SWEPI's motion: that the so-called "automatic termination" rule should be found applicable to the lease in this case, and result in the denial of SWEPI's motion to dismiss. This argument is without merit, as explained below.

In summary, the plaintiff relies chiefly on cases from outside of Pennsylvania holding that an oil and gas lease creates a fee simple determinable in the oil and gas resources existing underneath the real property, with the "determinable" event being the failure of any wells to produce hydrocarbons in paying quantities. (Doc. 19) (citing cases.) In the cases that the plaintiff cites, the courts explain that where applicable the automatic termination rule will operate to terminate a lease that does not produce hydrocarbons in paying quantities, unless the lease contains a savings clause, which will permit the lease to be extended. See, e.g. Krabbe v. Anadarko Petroleum Corp., 46 S.W.3d 308, 315 (Tex. App.-Amarillo 2001) ("[T]he lease may be kept alive after the primary term only be production in paying quantities or a savings clause such as a shut-in royalty clause . . . ."). The plaintiff argues that because it is undisputed that the wells on the Messner property or lands pooled therewith were not producing hydrocarbons in paying quantities as of October 16, 2011, the fee simple determinable estate created by the lease was automatically

terminated unless maintained by a savings clause in the lease, which the plaintiff tacitly suggests was absent in this case.

SWEPI has responded to this argument, persuasively, by arguing that the cases Messner cites are simply inapplicable to the circumstances of this case. As a threshold matter, SWEPI observes that – unlike in the cases cited by the plaintiff – in order to extend the term of the lease, SWEPI relied upon an express contractual provision that the parties agreed to, providing for rental payments to be made for wells that have been drilled but are not producing. We have already found that on the facts alleged in the complaint, SWEPI's tender of the Shut-In Royalty payment to the plaintiff was proper and served to extend the lease in accordance with the process established by paragraph 12 of the lease.

Aside from this threshold and dispositive matter, the cases the plaintiff cites are distinguishable and provide no basis for the court to find that the lease was terminated by the failure to produce hydrocarbons in paying quantities during the primary term. Thus, in Hite v. Falcon Partners, 13 A.3d 942 (Pa. Super. Ct. 2011), the intermediate appellate court considered a case in which an oil and gas lessee undertook no exploration or production activities on the leased acreage, and attempted to rely only upon delay rentals to extend the primary term of the lease. Id. at 944. The court affirmed a lower court decision finding that the lessee could not rely upon delay

rentals alone to extend the lease beyond the primary term. Id.

In contrast, in this case it is undisputed that SWEPI conducted exploration activities on the premises, developed the property by putting in place a fully-cased and cemented well drilled into the Marcellus Shale formation, and relied on its right to extend the lease by tendering the Shut-In Royalty payment in the event that the wells were suspended or otherwise not producing for any reason. This case is plainly different from Hite, and we find that case provides no basis for the court to conclude that the lease agreement in this case terminated automatically due to lack of hydrocarbon production at the conclusion of the primary term.

Furthermore, as SWEPI notes, in contrast to Hite, other decisions from the Pennsylvania Supreme Court have held that lease agreements under Pennsylvania law much contain a termination provision in order to terminate automatically. See Girolami v. Peoples Natural Gas Co., 76 A.2d 375, 378 (Pa. 1950) ("The lease in suit contains no provision for its automatic termination in the event of the failure of the lessee to drill or to pay the delay rental, nor any express reservation of the power of forfeiture."). Review of the lease agreement between Messner and SWEPI reveals that it likewise does not contain a forfeiture clause.

Moreover, the Pennsylvania Supreme Court has also found that timely payments of rentals in accordance with the terms of the habendum clause of a lease

will be sufficient to maintain the validity of a lease beyond its primary term unless the lease states otherwise. See Smith v. Peoples Natural Gas Co., 101 A. 739, 740 (Pa. 1917) (lease did not contain a forfeiture provision; timely tender of rental payments found to continue the lease beyond primary term); see also White v. Young, 186 A.2d 919, 920 (Pa. 1963) (finding payment of rentals called for in habendum clause sufficient to maintain lease beyond primary term, despite failure to find gas in paying quantities); Clark v. Wright, 166 A. 775, 775 (Pa. 1933) (observing that where a lessor is compensated solely based upon production under a lease, the period of production is the measure of the lease's duration; whereas, where a lessor's compensation is a fixed amount not tied to the volume of production, the duration of the lease is not measured by the period of production). In this case, the habendum clause provides that the lease will extend beyond the five-year primary term if there is production or if "this lease is otherwise maintained pursuant to the provisions hereof." (Lease, ¶ 3.) We agree with SWEPI that under the facts pled, the lease was extended beyond the five-year primary term by payment of the Shut-In Royalty payment and compliance with the lease terms – terms that did not include a forfeiture provision.

In summary, we find that this dispute begins and ends with the terms of the lease itself. The lease expressly permits SWEPI to extend the lease beyond the primary term by payment of the Shut-In Royalty payment whenever the wells that

18

have been drilled have been (1) shut-in, or (2) suspended, or (3) otherwise are not producing for any reason whatsoever. (Lease, ¶ 12.) SWEPI complied with these lease terms in acting to extend the lease, and we find no persuasive support for the plaintiff's argument that case law from foreign jurisdictions concerning distinguishable leases and terms should lead the court to conclude that the Shut-In Royalty provision in the lease before the court was either inapplicable or unenforceable in this case.

Likewise, we do not agree that the so-called "automatic termination" rule – to the extent it is even followed in Pennsylvania – has any application in this particular case, where the lease provided that the landlord would be compensated based on hydrocarbon production <u>and</u> upon a fixed amount, in the event production did not occur. In such cases, and in this case, payments of rentals agreed upon by the parties is sufficient, under Pennsylvania law, to maintain the lease beyond its initial term. Under the undisputed facts of this case, there is thus no basis for the court to find that the lease automatically terminated at the conclusion of the primary term, and SWEPI's motion to dismiss should be granted.

## V. **RECOMMENDATION**

Accordingly, IT IS HEREBY RECOMMENDED THAT the defendant's motion to dismiss (Doc. 4) be granted and this case marked closed.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: July 26, 2013.